# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**KAMAL HMIED, JAOUAD RADOUI,
HISSANE MISSOUAK, AISSAM
CHAKROUNI, RACHID AMRANI and
MOULAY BOUZEKRAOUI,**

               **Plaintiffs,**

**v.**                                        **Case No:  6:13-cv-1002-Orl-36KRS**

**TIMPANO ACQUISITION, LLC,
TAVISTOCK RESTAURANTS GROUP,
LLC and E-BRANDS RESTAURANTS,
LLC,**

               **Defendants.**

_____

## <u>ORDER</u>

      This cause comes before the Court on Defendants Timpano Acquisition, LLC ("Timpano

Acquisition"), Tavistock Restaurants Group, LLC ("TR Group"), and E-Brands Restaurants,

LLC's ("E-Brands" and, collectively with Timpano Acquisition and TR Group, "Defendants")

Motion to Dismiss and Compel Arbitration ("Motion to Compel Arbitration") (Doc. 14).  Plaintiffs

Kamal Hmied, Jaouad Radoui, Hissane Missouak, Aissman Chakrouni, Rachid Amrani, and

Moulay Bouzekraoui (collectively, "Plaintiffs") filed a response in opposition to the Motion to

Compel Arbitration ("Response") (Doc. 19).  Defendants filed a reply in further support of their

Motion to Compel Arbitration ("Reply") (Doc. 29), and Plaintiffs filed a sur-reply ("Sur-Reply")

(Doc. 36).  On February 4, 2014, the Court held a hearing on the Motion to Compel Arbitration,

and heard argument of counsel for Plaintiffs and Defendants.  *See* Doc. 46.  At the hearing, the

Court took the Motion to Compel Arbitration under advisement and granted leave for Defendants

to file a supplemental declaration and for Plaintiffs to file a response thereto. *See* Docs. 47, 48.

The parties have now filed these documents (Docs. 51-1, 55), and this matter is ripe for review.[1]

## I.    BACKGROUND

According to the Complaint, Plaintiffs are individuals who, during the relevant time period, were employed by Defendants as kitchen staff or food runners/bussers at one or more restaurants operated by Defendants in Orange County, Florida. Doc. 1 ¶¶ 9–17.[2] One of the Defendants, E-Brands, filed for Chapter 11 bankruptcy relief before any Plaintiff began working at the restaurants. Doc. 29-1 ¶ 3; *see* Doc. 1 ¶¶ 10–12, 14–16. In March 2011, after certain Plaintiffs started working at the restaurants,[3] E-Brands' equity interests were purchased by a non-party to this action, Tavistock Restaurants, LLC ("Tavistock Restaurants"), pursuant to a purchase agreement entered into in the bankruptcy proceeding. Doc. 29-1 ¶ 4. Upon purchasing E-Brands' equity interests, Tavistock Restaurants assumed control over the conditions of employment for those Plaintiffs who had previously been employed by E-Brands, including the authority to hire, fire, and/or modify the terms of their employment, as well as control over Plaintiffs' compensation. Doc. 51-1 ¶¶ 3–4.

---

[1] Also before the Court is Defendants' Motion to Strike Plaintiffs' Response to the Supplemental Declaration ("Motion to Strike") (Doc. 58), and Plaintiffs' response thereto (Doc. 59).

[2] As discussed in this Order, the issue of which entity or entities was Plaintiffs' "employer" is disputed.

[3] The Complaint alleges that Missouak and Bouzekraoui began working at the restaurants in November 2010 and that Radoui and Chakrouni began working there in March 2011. Doc. 1 ¶¶ 11–12, 14–15. At least two of the Plaintiffs, Hmied and Amrani, did not begin working at the restaurants until after Tavistock Restaurants purchased E-Brands' equity interests. *See* Doc. 1 ¶¶ 10, 16. However, the exact start dates for each Plaintiff are immaterial to the resolution of the issues addressed in this Order.

After purchasing E-Brands' equity interests, Tavistock Restaurants required said Plaintiffs to complete and sign an "Application for Employment" with Tavistock Restaurants. *See* Docs. 14-1, 14-3, 14-7, 14-9. Tavistock Restaurants also required new applicants, such as Hmied and Amrani, to complete and sign the Application for Employment. *See* Docs. 14-5, 14-11. The Application for Employment included the following arbitration clause:

> I understand and agree that if employed by Tavistock [Restaurants], any controversy or claim whether or not relating to my employment, including but not limited to claims of employment discrimination or harassment based on federal and state law, which cannot be resolved between the parties shall, on the written request of either party served on the other within the applicable statute of limitations, be submitted and resolved by final and binding arbitration. The Arbitration shall be conducted under the Rules for the Resolution of Employment Disputes of the American Arbitration Association [(the "AAA")] current at the time of the arbitration. I understand and agree further that my employment is conditioned upon my execution of an arbitration agreement in a form prescribed by Tavistock [Restaurants].

Doc. 14-1 at 5; Doc. 14-3 at 5; Doc. 14-5 at 5; Doc. 14-7 at 5; Doc. 14-9 at 5; Doc. 14-11 at 5.

Shortly after completing the Application for Employment, and pursuant to the last sentence of the aforementioned arbitration clause, each Plaintiff was required to sign a "Binding Arbitration Agreement" with Tavistock Restaurants (the "Arbitration Agreement"). *See* Docs. 14-2, 14-4, 14-6, 14-8, 14-10, 14-12. The Arbitration Agreement stated, in pertinent part:

> I … agree that any controversy, claim or dispute arising out of or relating to my employment with Tavistock Restaurants or the termination of that employment (whether based on contract, tort, or statutory duty or prohibition, including any prohibition against discrimination or harassment), will be settled by binding arbitration. I further agree to waive my right to participate in any class action lawsuit for claims arising out of my employment with Tavistock Restaurants or the termination of my employment, and I specifically agree to submit any such controversy, claim or dispute which I could litigate in a class action to binding arbitration as described in this agreement. I understand that I am also waiving my right to a jury trial by submitting to binding arbitration. . . .

*Id*. Unlike the Application for Employment, which provided that any arbitration would be conducted in accordance with the rules of the AAA, the Arbitration Agreement provided that any

arbitration would be conducted in accordance with the Employment Arbitration Rules and Procedures of the Judicial Arbitration and Mediation Services or the Employment Arbitration Rules of the Alternative Dispute Resolution Services. *Id*. The Arbitration Agreement also set forth the procedure for submitting and responding to claims and for selecting an arbitrator. *Id*. In addition, the Arbitration Agreement provided that any arbitration would take place in Los Angeles, California, and that Tavistock Restaurants would pay the arbitrator's expenses and fees, "meeting room charges", and "any other expenses that would not have been incurred if the case had been litigated in the judicial forum having jurisdiction over it." *Id*. However, each party would be responsible for its own attorney's fees, witness fees, and "other expenses incurred by the party for his or her own benefit", unless ordered otherwise by the arbitrator. *Id*. Finally, the Arbitration Agreement provided that "the parties will maintain their right to conduct more than minimal discovery, and will not limit either party relief otherwise available in court." *Id*. The differences between the arbitration clauses in the Application for Employment and the Arbitration Agreement were apparently the result of having two different vendors prepare the documents. Doc. 51-1 ¶ 8.

On June 28, 2013, Plaintiffs, individually and on behalf of all other similarly situated employees, filed the Complaint in this action, asserting the following claims against Timpano Acquisition, TR Group, and E-Brands: (1) Count I – violation of the overtime, recordkeeping, and notice requirements of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; (2) Count II – violation of the minimum wage provisions of the FLSA; and (3) Count III – violation of the minimum wage provisions of the Florida Constitution. *See* Doc. 1. Plaintiffs did not name Tavistock Restaurants as a party to this action. *See id*.

On August 1, 2013, Defendants filed the instant Motion to Compel Arbitration, arguing that Plaintiffs were required to arbitrate their claims pursuant to the Arbitration Agreement each

Plaintiff signed with Tavistock Restaurants.  *See* Doc. 14.  Defendants asked the Court to dismiss this action or, in the alternative, stay the action pending arbitration.  *See id.*  On August 27, 2013, Plaintiffs filed their Response, seeking to resist arbitration on several grounds.  *See* Doc. 19. Plaintiffs first argued that Defendants failed to prove the existence of a valid arbitration agreement, because none of the exhibits filed by Defendants had been authenticated.  *Id.* at 3–4.  Second, Plaintiffs asserted that because Tavistock Restaurants, rather than any named Defendant, was the signatory to the Applications for Employment and the Arbitration Agreements, Defendants could not use those documents to compel Plaintiffs to arbitration.  *Id.* at 4–6.  Third, Plaintiffs argued that the Arbitration Agreements modified the language in the arbitration clause in the Applications for Employment, and that these modifications were not supported by sufficient consideration, thereby rendering the Arbitration Agreements invalid.  *Id.* at 6–7.  Finally, Plaintiffs asserted that the Arbitration Agreements' purported waiver of Plaintiffs' right to a collective action was unlawful under the FLSA.  *Id.* at 7–18.[4]

With leave of Court, Defendants filed their Reply, in which they attempted to address Plaintiffs' contentions regarding the agreements' lack of authentication and the fact that Tavistock Restaurants, rather than any named Defendant, had been the signatory to those agreements.  *See* Doc. 29.  As an exhibit to their Reply, Defendants filed the declarations of Lisa Tomlinson, the Vice President of Human Resources for Tavistock Restaurants.  *See* Doc. 29-1.  According to Defendants, Tomlinson's declarations served to authenticate the documents.  Doc. 29 at 3–4. Defendants also argued that the fact that they were non-signatories to the arbitration agreements

---

[4] Plaintiffs also requested that, in the event the Court granted the Motion to Compel Arbitration, the Court:  (1) hold the Arbitration Agreements to be invalid and compel arbitration pursuant to the Applications for Employment; (2) hold that Plaintiffs are entitled to maintain a collective action in the arbitration proceeding; and (3) stay the action pending arbitration rather than dismissing it. Doc. 19 at 18–20.

did not prevent them from enforcing the agreements, because the agreements were enforceable by Defendants under the doctrine of equitable estoppel as well as under agency principles.  *Id.* at 4–5.

In her declarations, Tomlinson expressed familiarity with the Applications for Employment and the Arbitration Agreements, and stated that the documents were business records maintained in the ordinary course of Tavistock Restaurants' business.  Doc. 29-1 ¶¶ 7–8.  In describing how Tavistock Restaurants was related to Defendants, Tomlinson explained that Tavistock Restaurants purchased E-Brands' equity interests pursuant to the purchase agreement in E-Brands' bankruptcy proceeding, and that Tavistock Restaurants shared a "common ownership" with the named Defendants.  *Id.* ¶¶ 4, 6.  Aside from the common ownership, however, she did not otherwise describe the relationship between Tavistock Restaurants and Defendants.  *See id.*  As to the issue of Plaintiffs' employment, Tomlinson stated that Tavistock Restaurants "was the operational entity for the restaurant entities where Plaintiffs were employed and it was the entity that entered into the arbitration agreements with the Plaintiffs."  *Id.* ¶ 6.  Tomlinson further averred that TR Group "was not Plaintiffs' employer, did not issue paychecks to Plaintiffs and it did not enter into the arbitration agreements with Plaintiffs."  *Id.* ¶ 5.  Tomlinson's declarations did not describe the relationship between Timpano Acquisition and Plaintiffs, or E-Brands and Plaintiffs, other than stating that E-Brands' equity interests had been purchased by Tavistock Restaurants in E-Brands' bankruptcy proceeding.  *Id.* ¶ 4.

With leave of Court, Plaintiffs filed their Sur-Reply, pointing to the general rule that non-signatories to an arbitration agreement cannot compel a signatory to arbitration.  Doc. 36 at 2.  Plaintiffs further argued that three limited exceptions to this general rule—equitable estoppel, agency, or third-party beneficiary—were inapplicable to the facts at hand.  *Id.* at 2–5.

On February 4, 2014, the Court held a hearing on the Motion to Compel Arbitration, and heard argument of counsel for Plaintiffs and Defendants. *See* Doc. 46. At the hearing, the Court noted that, while Tomlinson had averred that Tavistock Restaurants was the "operational entity" for the restaurants where Plaintiffs were employed, she did not clearly state that the company was Plaintiffs' "employer". The Court also explained that, while Defendants had claimed a common ownership with Tavistock Restaurants, they had not demonstrated an *agency* relationship. To obtain clarity on these issues, the Court granted Defendants leave to file a supplemental declaration addressing the Court's concerns, while also granting Plaintiffs leave to respond to the supplemental declaration. *See* Doc. 47. The Court stated that it would take the Motion to Compel Arbitration under advisement until the parties filed the requested documents. *See* Doc. 48. However, the Court did indicate that it considered the authentication issue resolved, because Tomlinson had properly authenticated the documents.

On February 19, 2014, Defendants filed the supplemental declaration, again provided by Tomlinson. *See* Doc. 51-1. In the supplemental declaration, Tomlinson stated that E-Brands had been Plaintiffs' employer until Tavistock Restaurants purchased E-Brands' equity interests, after which Tavistock Restaurants became Plaintiffs' employer. *Id.* ¶¶ 3–4. Tomlinson explained that Timpano Acquisition is a subsidiary of E-Brands that was merely responsible for the administrative act of paying Plaintiffs, and was not Plaintiffs' employer. *Id.* ¶ 5.

On February 21, 2014, Plaintiffs filed a response to the supplemental declaration, arguing that the declarations were insufficient to prove the applicability of one of the limited exceptions to the general rule that non-signatories to an arbitration agreement cannot compel a signatory to arbitration. *See* Doc. 52.

On March 11, 2014, Defendants filed the Motion to Strike, asserting that Plaintiffs' response to the supplemental declaration should be stricken because it went beyond what the Court had allowed in its oral orders at the hearing on the Motion to Compel Arbitration.  *See* Doc. 58. Plaintiffs responded, arguing that the Motion to Strike was procedurally improper and without merit.  *See* Doc. 59.

## II.    DISCUSSION

### A.    Motion to Strike

As an initial matter, the Court finds Defendants' Motion to Strike to be without merit, as Plaintiffs' response to the supplemental declaration did not exceed the scope permitted by the Court.  At the hearing, after granting Defendants permission to file the supplemental declaration, the following exchange occurred:

> THE COURT:  . . . Mr. Adams, was there anything -- I mean, you haven't filed any declarations anyway. Are you requesting an opportunity to respond about a declaration or is it that you just are not able to make a decision at this time until you see their declaration?
>
> MR. ADAMS: I would agree with that, Your Honor. And I think the rules would provide me with an opportunity to move to strike it or to attack it in any fashion that I chose to --
>
> THE COURT: Okay.
>
> MR. ADAMS: -- without the need for the Court to necessarily enter an Order.
>
> THE COURT: Okay. How much time do you think you will need, Ms. Colombo?
>
> MS. COLOMBO: No more than ten days.
>
> THE COURT: Okay.
>
> MS. COLOMBO: And we intend not only to provide a supplemental declaration, but to attach any supportive documents as well because, again, I want to make sure that we have a very clean record as to who the employer is.
>
> THE COURT: Okay. All right. I will give you, then 14 days to file a supplemental declaration, and the Plaintiffs will have 14 days thereafter within which to respond to that supplemental declaration.

Doc. 59-1, Transcript 47:5–48:3.   Contrary to Defendants' argument, at no point did the Court limit Plaintiffs to making only *factual* rebuttals to the supplemental declaration, nor did the Court prohibit Plaintiffs from citing to legal authorities or presenting legal argument.   Accordingly, Defendants' Motion to Strike is without merit and will be denied.

### B.      Motion to Compel Arbitration

Section 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, provides that written agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."   9 U.S.C. § 2.  Section 3 of the FAA requires that a court, upon motion by a party to an action in federal court, stay the action if it involves an "issue referable to arbitration under an agreement in writing."   9 U.S.C. § 3.   "These provisions manifest a 'liberal federal policy favoring arbitration agreements.'"   *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).   "Therefore, 'questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitrations.'"   *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999) (quoting *Moses H. Cone*, 460 U.S. at 24).   "Notwithstanding this strong federal policy, however, arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.   As a general rule, therefore, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability."   *Id.* (internal citations and quotations omitted).

In this case, Plaintiffs argue that because Defendants are non-signatories to the Applications for Employment and the Arbitration Agreements, those documents cannot be used to compel Plaintiffs to arbitration.   Doc. 19 at 4–6.[5]   Indeed, a fundamental rule of contract law is

---

[5] Plaintiffs make two additional arguments as to why Defendants have failed to demonstrate the existence of a valid arbitration agreement.   First, they contend that the Applications for

that "one who is not a party to an agreement cannot enforce its terms against one who is a party."
*Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1167 (11th Cir. 2011).  However, in *MS Dealer*,
the Eleventh Circuit recognized that there are limited exceptions that permit non-signatories to a
contract to compel arbitration.   177 F.3d at 947.   The *MS Dealer* court recognized three such
exceptions:  equitable estoppel, agency or related principles, and third-party beneficiary.  *Id.*  After
*MS Dealer*, however, the Supreme Court ruled that *state law* governs whether an arbitration clause
is enforceable against a non-signatory under the FAA.  *Arthur Andersen LLP v. Carlisle*, 556 U.S.
624, 631 (2009).   The Eleventh Circuit has since observed that *MS Dealer* was abrogated by
*Carlisle* to the extent that *MS Dealer* did not make clear that state law provides the rule of decision.
*Lawson*, 648 F.3d at 1170–71.  Accordingly, this Court must look to the "relevant state contract
law" to determine whether Defendants, as non-signatories to the Applications for Employment and
the Arbitration Agreements, can compel arbitration.  *Carlisle*, 556 U.S. at 632.  Here, the parties
have proceeded under the assumption that Florida law determines whether valid arbitration
agreements exist, and the Court, discerning no issue with the application of Florida law, will do
the same.  *See Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005) ("[I]n
determining whether a binding agreement arose between the parties, courts apply the contract law
of the particular state that governs the formation of contracts.").

---

Employment and the Arbitration Agreements were not properly authenticated.  Doc. 19 at 3–4.
However, as the Court has already explained, those documents were properly authenticated by
Tomlinson in her declarations, and therefore this issue has been resolved.  *See supra*, Part I.
Second, Defendants maintain that the Arbitration Agreements are invalid because said agreements
modified the terms of the arbitration agreements in the Applications for Employment, and those
modifications were not supported by sufficient consideration.  *Id.* at 6–7.  However, the Court need
not address this argument because, for the reasons discussed *infra*, the Court finds that Defendants
cannot compel Plaintiffs to arbitration.

"Generally, [Florida] courts have recognized that a non-signatory may compel a signatory to arbitration under the theory of equitable estoppel or upon principles of agency." *Heller v. Blue Aerospace, LLC*, 112 So. 3d 635, 637 (Fla. 4th DCA 2013) (citing cases).[6] Defendants argue that both exceptions are applicable here. *See* Doc. 29.

Under Florida's agency exception, non-signatories may compel arbitration where the claims against the non-signatories arose due to their activities as agents of the signatory, and where the non-signatories' liability and the signatory's liability are based on the same set of operative facts. *See Heller*, 112 So. 3d at 637; *Shetty v. Palm Beach Radiation Oncology Assocs.-Sunderam K. Shetty, M.D., P.A.*, 915 So. 2d 1233, 1235 (Fla. 4th DCA 2005); *Koechli*, 870 So. 2d at 946; *Qubty v. Nagda*, 817 So. 2d 952, 957 (Fla. 5th DCA 2002); *Tenet Healthcare Corp. v. Maharaj*, 787 So. 2d 241, 243 (Fla. 4th DCA 2001). Accordingly, a requirement of the agency exception is that the non-signatories were indeed acting as *agents* of the signatory.

Under Florida law, an agency relationship may be shown by demonstrating control and domination by one party over another. *Citibank, N.A. v. Data Lease Fin. Corp.*, 828 F.2d 686, 691 (11th Cir. 1987) (citing Florida cases). The agency relationship may be created expressly by agreement of the parties or impliedly based on past dealings between the parties. *Sapp v. City of Tallahassee*, 348 So. 2d 363, 367 (Fla. 1st DCA 1977). Florida law also recognizes the doctrine of apparent agency, where a principal creates the appearance of an agency relationship through its actions. *Roessler v. Novak*, 858 So. 2d 1158, 1161–62 (Fla. 2d DCA 2003). An apparent agency exists where the following elements are present: (1) a representation by the purported principal;

---

[6] Florida courts have also recognized a third-party beneficiary exception. *Koechli v. BIP Int'l, Inc.*, 870 So. 2d 940, 944 (Fla. 1st DCA 2004) (citing cases). However, Defendants have not raised the third-party beneficiary exception, and therefore the Court need not address it.

(2) a reliance on that representation by a third party; and (3) a change in position by the third party in reliance on the representation. *Id.* at 1161.

In this case, Defendants have failed to demonstrate that they were acting as agents of Tavistock Restaurants under any theory of agency liability.  There is nothing in Tomlinson's original or supplemental declarations showing that Tavistock Restaurants exercised any control or domination over Defendants.  *See* Docs. 29-1, 51-1.  Tomlinson stated that Timpano Acquisition performed the administrative act of paying Plaintiffs, *see* Doc. 51-1 ¶ 5, but that alone does not establish that Timpano Acquisition was an agent of Tavistock Restaurants.  The *only* representation made by Tomlinson with respect to TR Group is that TR Group was not Plaintiffs' employer, did not issue paychecks to Plaintiffs, and did not enter into the arbitration agreements. Doc. 29-1 ¶ 5.  Nothing in this representation comes close to establishing that TR Group was an agent of Tavistock Restaurants.  Finally, with respect to E-Brands, Tomlinson merely averred that Tavistock Restaurants purchased E-Brands' equity interests.  *Id.* ¶ 4.  The mere sale of E-Brands' equity interests, however, does not mean that E-Brands was acting as an agent of Tavistock Restaurants.  Moreover, with respect to apparent agency, Defendants have not made any showing of a representation by Tavistock Restaurants, reliance on that representation by Plaintiffs, *or* a change in position by Plaintiffs in reliance on the representation. *See Roessler*, 858 So. 2d at 1161. Accordingly, there is no basis for the Court finding apparent agency in this case.

At the hearing on the Motion to Compel Arbitration, Defendants' counsel argued that the agency exception applied because Defendants and Tavistock Restaurants were "related entities", apparently relying on Tomlinson's declaration that Tavistock Restaurants shared a "common ownership" with Defendants.  *See* Doc. 29-1 ¶ 6.  However, as the Court pointed out during the hearing, the fact that entities are "related" does not mean that an agency relationship exists.

Defendants were given an opportunity to provide a supplemental declaration addressing this issue, but Tomlinson's supplemental declaration does nothing to support the notion that Defendants were acting as agents of Tavistock Restaurants. Accordingly, Defendants have failed to demonstrate that Florida's agency exception applies in this case.

As to the second exception argued by Defendants, the doctrine of equitable estoppel applies in two situations under Florida law: (1) when a signatory's claims allege "substantially interdependent and concerted misconduct" by non-signatories and one or more signatories; or (2) when the claims relate directly to the contract and the signatory is relying on the contract to assert its claims against the non-signatory. *Koechli*, 870 So. 2d at 944; *see also Armas v. Prudential Sec., Inc.*, 842 So. 2d 210, 212 (Fla. 3d DCA 2003). Neither situation is presented here. First, Plaintiffs have not made any allegations of interdependent and concerted misconduct by Tavistock Restaurants and Defendants. Instead, Plaintiffs' allegations are focused entirely on Defendants' alleged failure to adequately compensate them. *See* Doc. 1. Nor do Plaintiffs rely on the arbitration agreements to assert their claims against Defendants. Rather, their claims for violations of the FLSA and the Florida Constitution are completely independent from any contractual obligations arising under the arbitration agreements. As such, Defendants have failed to demonstrate that equitable estoppel should apply.

Because Defendants have failed to establish the applicability of an exception to the general rule that non-signatories cannot compel arbitration, their Motion to Compel Arbitration must be denied.

Accordingly, it is hereby **ORDERED**:

1.      Defendants' Motion to Dismiss and Compel Arbitration (Doc. 14) is **DENIED**.

13

2.     Defendants' Motion to Strike Plaintiffs' Response to Defendants' Supplemental

Declaration (Doc. 58) is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on March 28, 2014.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties